UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOUCHPOINT PROJECTIONS INNOVATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CATO NETWORKS, INC.<br><br>Defendant. | CASE NO. 25-13141<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Touchpoint Projection Innovations, LLC (hereinafter "Touchpoint"), by and through its undersigned attorneys, files this Complaint for infringement of U.S. Patent No. 9,118,712 (hereinafter the "'712 Patent") against Defendant Cato Networks, Inc. ("Defendant" and/or "Cato Networks") and alleges as follows.

## NATURE OF ACTION

1.  This is an action for infringement of United States Letters Patent No. 9,118,712 under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*

## THE PARTIES

2.  Plaintiff Touchpoint is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business at 1712 Pioneer Ave Suite 500, Cheyenne, Wyoming 82001. Touchpoint is in the business of licensing patented technology. Touchpoint is the assignee of all right, title, and interest in United States Letters Patent No. 9,118,712.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

1

3. Upon information and belief, Defendant is a company organized and existing under the laws of the State of Delaware, with a place of business at 75 State Street, Ste 100, Boston, MA 02109. On information and belief, Defendant may be served through its registered agent in the State of Delaware: VCorp Services, LLC, 108 W. 13th Street, Suite 100, Wilmington, DE 19801.

## JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, 35 U.S.C. § 271 *et seq*. Plaintiff is seeking damages, as well as attorney fees and costs.

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

6. This Court has personal jurisdiction over Defendant. Defendant has continuous and systematic business contacts with the State of Massachusetts. Defendant transacts business within this District and has appointed an agent for service of process in Massachusetts. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of the '712 Patent in this District.

7. Defendant directly conducts business extensively throughout the State of Massachusetts, by distributing, making, using, offering for sale, selling, and advertising its services in the State of Massachusetts. Defendant has purposefully and voluntarily made its business services, including the infringing systems and services, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District

8. Defendant maintains a physical brick-and-mortar business location in this District, retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District. *See* Figure 1 below.



**Figure 1**
**Cato Networks Office in Boston, Massachusetts**
**(Source: https://www.catonetworks.com/contact-demo/)**

9.  Venue is proper in the District of Massachusetts as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b). As noted above, Defendant maintains a regular and established business presence in this District.

## THE PATENT IN SUIT

10. On August 25, 2015, United States Letters Patent No. 9,118,712 (hereinafter "the '712 Patent"), entitled "NETWORK COMMUNICATION SYSTEM WITH IMPROVED SECURITY," was duly and legally issued by the United States Patent & Trademark Office. A copy of the '712 Patent is attached hereto as Exhibit A.

11. The '712 Patent issued from U.S. Patent Application Number 12/982,504, which was filed on December 30, 2010. The inventors of the '712 Patent assigned all of their rights, title, and interest in and to the '712 Patent to Everis, Inc. and Everis, Inc. assigned its entire right, title, and interest in and to the '712 Patent to Touchpoint.

12. Touchpoint is the current and sole owner of all rights, title and interest in and to the '712 Patent and, at a minimum, of all substantial rights in the '712 Patent, including the exclusive right

to enforce the patent and all rights to pursue past, present and future damages and to seek and obtain injunctive or any other relief for infringement of the '712 Patent.

13. Defendant has knowledge of its infringement of the '712 Patent, at least as of the service of the present complaint.

14. The priority date of the '712 Patent is at least as early December 30, 2010. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

15. The '712 Patent relates to securing two way communications over a network (such as the Internet) by preventing the receipt and adverse effects of malware.

16. As described in the specification of the '712 patent, software rendering software is interposed in the data communication path between a browser running on a user computer and the internet data sources (for example, internet-accessible server computers) that the user browser wants to receive information from. The software rendering application gets data from internet data sources, but this data may contain malware. *See* Abstract, '712 Patent.

17. To provide enhanced security, the software rendering application renders this data to form a new browser readable code set (for example, an xml page with CSS layers), and this new and safe browser readable code set is sent along to the browser on the user computer for appropriate presentation to the user. *Id.*

18. As part of the rendering process, dedicated and distinct virtual machines may be used to render certain portions of the data, such as executable code. These virtual machines may be watched, and quickly destroyed if it is detected that they have encountered some type of malware. *Id.*

19. As noted, the claims of the '712 Patent have priority to at least December 30, 2010. The deficiencies in the state of the art as of the Date of Invention were highly problematic. The need

for connection and interacting with the internet had become part of the way businesses, households, academia, governments and individuals conduct business, provide information, educate and derive entertainment. Unfortunately, the shared nature of its make-up and anonymity inherent also provide the basis for malicious activity that invades privacy, steals information and increases risk of liability for information loss. Sophisticated "hacking" practices generally are exercised and delivered to the victim via internet browsing which also includes the visiting of legitimate web sites that have been compromised to allow the transmittal of malware to the visitor's internet connected computer. *See* '712 Patent at 1:24-36.

20. With the increased popularity and robustness of browser software comes increased risk of malicious code, which is commonly referred to as malware. It also makes it more difficult to control communications that need some measure of oversight and control, such as communications from young students, people on probation, suspected terrorists or military personnel near a combat zone. *Id*. at 1:64 – 2:4.

21. The claims of the '712 Patent overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.

22. The claims of the '712 Patent are not drawn to laws of nature, natural phenomena, or abstract ideas. The specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

23. Further, the claims of the '712 Patent contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

24. The inventions claimed in the '712 Patent are directed to solving a problem specifically arising in the realm of computer technology, specifically hacking via malware. The invention

claimed in the '712 Patent solves this problem by, *inter alia*, interposing software rendering software in the data communication path between a browser running on a user computer and internet data sources that the user browser wants to receive information from. The software rendering application renders this data to form a new browser readable code set (for example, an xml page with CSS layers), and this new and safe browser readable code set is sent along to the browser on the user computer for appropriate presentation to the user. As part of the rendering process, dedicated and distinct virtual machines may be used to render certain portions of the data, such as executable code. These virtual machines may be watched, and quickly destroyed if it is detected that they have encountered some type of malware.

25.     The '712 Patent was examined by Primary United States Patent Examiner Kaveh Abrishamkar. During the examination of the '712 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: H04L 63/1441 (2013.01); H04L 6310281 (2013.01); and H04L 63/168 (2013.01).

26.     After conducting a search for prior art during the examination of the '712 Patent, the United States Patent Examiner identified and cited three U.S. patents and twenty-nine published U.S. Patent Applications as relevant prior art references found during the search.

27.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '712 Patent to issue. In so doing, it is presumed that the Examiner used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that the Examiner had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir.

2002). In view of the foregoing, the claims of the '712 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '712 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiner.

28. The nominal expiration date for the claims of the '712 Patent is no earlier than August 16, 2031.

## DEFENDANT'S ACCUSED INSTRUMENTALITIES/SERVICES

29. On information and belief, Cato Networks provides the Cato Networks Remote Browser Isolation service ("Cato Networks RBI") ("Accused Instrumentalities"). The Cato Networks RBI is a cloud-delivered security service that connects user browser software running on a user's computer to the internet for data communication. The user's web session is executed in a remote, isolated browser instance running in Cato Networks' cloud platform. Further, when the user sends a command to access a data source, the command is intercepted by the Cato Networks RBI, which sends a data request to the internet. Further, the Cato Networks RBI receives and renders a responsive code, such as JavaScript, HTML, and CSS, received from the internet. RBI converts this code into safe pixel streams and sends it to the local browser running on the user's computer. Therefore, it would be apparent to a person having ordinary skill in the art that the Cato Networks RBI performs the method of connecting the user's browser to the internet via a remote container for the purposes of data communication with internet data sources ("Accused Services"). *See* **Exhibit B**.

## FIRST CAUSE OF ACTION
**(Direct Infringement of the '712 Patent)**

30. Touchpoint hereby repeats and re-alleges the allegations contained in paragraphs above as if fully set forth herein.

31. The '712 Patent is presumed valid under 35 U.S.C. § 282.

32. Touchpoint has complied with the requirements of 35 U.S.C. § 287 as have all prior owners of the '712 Patent.

33. Defendant has knowledge of its infringement of the '712 Patent, at least as of the service of the present complaint.

34. The Accused Instrumentalities and Accused Services are covered by one or more claims of the '712 Patent and therefore infringe the '712 Patent. A claim chart attached as **Exhibit B** identifies specifically how each element of exemplary claim 1 of the '712 Patent is practiced by the Accused Instrumentalities and/or the Accused Services.

35. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claim 1, of the '712 Patent, by having its employees internally test and use the Accused Instrumentalities and/or Accused Services.

36. **Exhibit B** includes at least one chart comparing exemplary claim 1 of the '712 Patent to the Accused Instrumentalities and/or Accused Services. As set forth in this chart, the Accused Instrumentalities and/or Accused Services practice the technology claimed by the '712 Patent. Accordingly, the Accused Instrumentalities and/or Accused Services incorporated in this chart satisfy all elements of exemplary claim 1 of the '752 Patent.

37. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of **Exhibit B.**

38. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

39. Defendant's actions complained of herein will continue unless Defendant is enjoined by this Court.

40. By engaging in the conduct described herein, Defendant has injured Plaintiff and is liable for infringement of the '712 Patent, pursuant to 35 U.S.C. § 271.

41. Defendant has committed these acts of literal infringement, or infringement under the doctrine of equivalents of the '712 Patent, without license or authorization.

42. As a result of Defendant's infringement of the '712 Patent, injured Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

43. Plaintiff is in compliance with 35 U.S.C. § 287.

44. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement of the '712 Patent up until the date that Defendant ceases its infringing activities.

<u>**SECOND CAUSE OF ACTION**</u>
**(Indirect Infringement of the '712 Patent)**

45. Touchpoint hereby repeats and re-alleges the allegations contained in paragraphs above as if fully set forth herein.

46. Defendant's customer end-users directly infringe the claims of the '712 patent, including at least claim 1 due to their use of Accused Instrumentalities and/or Accused Services in their normal and customary way in this District.

47. Defendant indirectly infringes by inducing infringement of the claims of the '712 Patent by aiding and abetting consumer end-users to use the Accused Instrumentalities and/or the Accused Services in their normal and customary way in the United States and in this District and by contributing to infringement of the claims of the '712 Patent by supplying components and

providing instructions to consumer end-users for using those components in practicing the method claimed in claim 1 of the '712 Patent.

48. Defendant aids and abets consumer end-users in infringing the claims of the '712 Patent with the knowledge of, and the specific intent to cause, the acts of direct infringement performed by these consumer end-users. On information and belief, despite having knowledge of the '712 Patent, Defendant will continue to use, sell, and/or offer to sell the Accused Instrumentalities and/or Accused Services directly and through the actions of others controlled by Defendant.

49. Defendant's indirect infringement of the '712 Patent has injured and continues to injure Touchpoint and Touchpoint is entitled to recover damages adequate to compensate for that infringement in an amount to be proven at trial, but not less than a reasonable royalty.

50. Despite Defendant's knowledge of the '712 Patent and its infringing activities and the infringing activities of consumer end-users of Defendant's Accused Instrumentalities and/or Accused Services, Defendant has continued to use, sell, and/or offer for sale products and services falling within the scope of one or more claims of the '712 Patent, without authority from Touchpoint.

51. Even after becoming aware of its indirect infringement of the '712 Patent, on information and belief, Defendant has made no effort to alter its services or otherwise attempt to design around the claims of the '712 Patent in order to avoid infringement.

52. As a result of Defendant's unlawful activities, Touchpoint has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Defendant's continued indirect infringement of the '712 Patent causes harm to Touchpoint in the form of loss of goodwill, damage to reputation, loss of business opportunities, lost profits, inadequacy of monetary damages, and/or direct and indirect competition. Monetary damages are insufficient to compensate

Touchpoint for these harms. Accordingly, Touchpoint is entitled to preliminary and permanent injunctive relief.

## PRAYER FOR RELIEF

Wherefore, Touchpoint respectfully prays this Court enter judgment in its favor on each and every Claim for Relief and award to Touchpoint relief, including, but not limited to, the following:

A. Entry of judgment in favor of Touchpoint, and against Defendant, on each and every claim in this Complaint;

B. Entry of judgment in favor of Touchpoint, and against Defendant, that Defendant has directly infringed the claims of the '712 Patent;

C. Entry of judgment in favor of Touchpoint, and against Defendant, that Defendant has indirectly infringed the claims of the '712 Patent by inducing the infringement thereof and/or contributing to the infringement thereof;

D. Entry of judgment in favor of Touchpoint, and against Defendant, that this case is an exceptional case and awarding Touchpoint its reasonable attorney fees and costs pursuant to 35 U.S.C. § 285 and any other applicable statutes, laws, and/or rules; and

E. Entry of preliminary and permanent injunctions against Defendant, and its officers, directors, principals, agents, sales representatives, servants, employees, successors, assigns, affiliates, divisions, subsidiaries, and all those acting in concert or participation with them, from directly infringing, inducing infringement and/or contributing to the infringement of any claim of the '712 Patent.

F. A determination that Touchpoint is the prevailing party and therefore entitled to its taxable costs; and

G. Entry of judgment in favor of Touchpoint, and against Defendant, awarding Touchpoint such other relief the Court deems just, equitable, and proper.

## DEMAND FOR A JURY TRIAL

Touchpoint requests a trial by jury, under Rule 38 of the Federal Rules of Civil Procedure, for all issues so triable.

Dated: October 21, 2025                         Respectfully Submitted,

/s/ *Brendan M. Shortell*
Brendan M. Shortell (BBO# 675851)
Lambert Shortell & Connaughton
100 Franklin Street, Suite 903
Boston, MA 02110
Telephone: 617.720.0091
Facsimile: 617.720.6301
shortell@lambertpatentlaw.com

René A. Vazquez
(*Pro Hac Vice* anticipated)
Virginia Bar No. 41988
rvazquez@dnlzito.com
**DNL ZITO**
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
Telephone: (703) 989-2244

Joseph J. Zito
(*Pro Hac Vice Anticipated*)
**DNL Zito**
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
jzito@dnlzito.com
(202) 466-3500

**COUNSEL FOR PLAINTIFF**